OPINION OF THE COURT
Michael D. Stallman, J.
This motion to modify this court’s order vacating an arbitration award raises a novel issue: May the New York Supreme Court order a conditional remittitur in an arbitration proceeding? Specifically, may this court order reduction of an excessive punitive damage award as an alternative to a costly new arbitration?
Facts
This matter comes before this court for the third time. By order and judgment dated May 31, 2002, this court modified an arbitration award issued in favor of petitioner Sawtelle, and, as modified, confirmed the award. That award included a provision for punitive damages in the amount of $25 million. On appeal, the Appellate Division, First Department, modified this court’s order by granting respondents’ cross motion to vacate the punitive damages award; affirmed the order except as modified; and remanded the matter to the original panel of arbitrators “for reconsideration of the issue of punitive damages.” (Sawtelle v Waddell & Reed, 304 AD2d 103, 118 [1st Dept 2003].)
Upon reconsideration, the arbitration panel accepted voluminous written submissions, held a one-day hearing, and issued a second award. The second award changed the phrase “after Claimant was terminated, Respondents orchestrated a campaign of deception,” which appears in the initial award, to the phrase “after Claimant was terminated, Respondents orchestrated and conducted a horrible campaign of deception, defamation and persecution of Claimant,” and again awarded punitive damages of $25 million. Petitioner moved, pursuant to CPLR 7510, to confirm the second award, and respondents moved, pursuant to CPLR 7511, to vacate it. By order, dated January 22, 2004, this court vacated the second award and ordered that the matter be submitted to a new panel of arbitrators.
Petitioner now moves for what he recognizes would be unprecedented relief: modification of this court’s second order, so as to direct a conditional remittitur in a proceeding governed by the Federal Arbitration Act (FAA).
While troubled by the magnitude of punitive damages, and its ratio to compensatory damages in the initial award, this court *489 held in its first decision that the award, granted pursuant to the Connecticut Unfair Trade Practices Act (CUTPA), was enforceable under that statute, given the public policy in favor of the finality of arbitration and the limited basis for judicial review and vacatur of arbitration awards. This court disagreed with respondents’ position that the award was barred by the decision of the United States Supreme Court in BMW of N. Am., Inc. v Gore (517 US 559 [1996]). In Gore, the United States Supreme Court invalidated a $2 million judgment of punitive damages against BMW of North America, which amounted to 500 times the $4,000 compensatory damages awarded. Gore concerned a trial in court, not an arbitration. This court summarized the Supreme Court’s reasoning: notice of potential liability is a fundamental requirement of due process; BMW could not reasonably have had notice that it might become liable for punitive damages that were not related to (1) the degree of reprehensibility of its conduct, (2) the extent of actual or potential damage caused by its conduct, or (3) penalties that had been, or could be, imposed for similar misconduct in analogous cases.[1] This court held Gore inapplicable to private arbitrations because the Due Process Clause of the Fourteenth Amendment is not applicable absent state action.
The Appellate Division disagreed with this court’s understanding of Gore, holding that Gore not only sets the outer constitutional limits on court awards of punitive damages, but also sets the standard for gauging the reasonableness of arbitration awards. The Appellate Division also held that the parties had represented to the first arbitration panel that, under CUTPA, punitive damages could not exceed an amount three times that of compensatory damages. Accordingly, the Appellate Division found that the arbitration panel’s first award of punitive damages was both irrational and made in manifest disregard of the law.
When this matter came before this court the second time, this court applied the Gore standard to the arbitration as mandated by the Appellate Division and vacated the panel’s second award, because, inter alia, the panel acted illegally, arbitrarily and beyond its authority when it awarded punitive damages so *490 disproportionate to the compensatory damages awarded. All too aware that the same arbitration panel might not be expected to impartially apply the Appellate Division’s mandate and the Gore standard, this court remanded with a direction that a different panel hear the new (i.e., third) arbitration.
It is now more than seven years since petitioner first filed his statement of claim with the National Association of Securities Dealers. In the first arbitration, the transcript ran to more than 10,000 pages, and petitioner’s legal fees, alone, amounted to $747,000. Thereafter, the parties litigated the first proceeding before this court, the appeal to the Appellate Division, the second arbitration, the second proceeding before this court and, now, this motion. All this, plus likely appeals to the Appellate Division of this court’s second order and this court’s instant order, plus petitioner’s promised attempt to appeal the first Appellate Division decision to the Court of Appeals, should be enough. Because there is no assurance that the next arbitration panel, or panels, will consider themselves bound either by Gore, or by the decision(s) of the Appellate Division, petitioner understandably fears that he may face a series of arbitrations that may award him punitive damages in an amount that this court could not legally confirm. Moreover, a new arbitration before a new panel is likely to be as expensive and time consuming as the first. The history of this arbitration undermines the very purpose of arbitration: to provide a manner of dispute resolution more swift and economical than litigation in court.
Petitioner’s suggestion seems to make sense. If New York law now permits a court to vacate an arbitration award of punitive damages solely on the ground of excessiveness, because it is disproportionate under Gore, then a court should be able to modify that award in the same way that the court would modify a legally excessive jury verdict.
Nevertheless, nothing in the Federal Arbitration Act, or the CPLR, allows this court to do so. Petitioner correctly indicates that courts in New York imposed conditional remittiturs, under common-law practice, before they had a statutory basis. Arbitration is a different matter. Private commercial arbitration as we know it did not exist under common law. Arbitration is governed exclusively by statute and the parties’ agreement. Judicial power over arbitration is exclusively statutory. Neither federal nor New York law vests this court with conditional remittitur power in an arbitration. (See Federal Arbitration Act [9 USC] § 11; CPLR art 75.)
*491 A court’s power to modify an award issued in an arbitration conducted pursuant to the FAA is governed, and strictly limited by, FAA (9 USC) § 11. Section 11 provides, in relevant part, that a court may modify or correct an award:
“(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
“(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
“(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.”
None of these grounds for modifying an award applies here. Moreover, none of them would authorize the setting of a conditional remittitur.
Conditional remittitur in the arbitration context, narrowly limited to the punitive damages disproportionality situation here at issue, would advance the purpose of arbitration by lessening the parties’ work and expense and by expediting the process. It requires legislative action.[2]
Accordingly, this court is constrained to deny the motion.

. In its most recent case on punitive damages, the Supreme Court stated that “[o]ur jurisprudence and the principles it has now established demonstrate . . . that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.” (State Farm. Mut. Auto. Ins. Co. v Campbell, 538 US 408, 425 [2003].)

. In contrast, broader remittitur or modification authority is contraindicated. Permitting a discontented party to relitigate before a judge would undermine arbitration and increase the parties’ work and expense.